**[IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**RAYMOND MACMEEKEN**

    **Plaintiff,**

vs.                                                          **No. CIV 08-1045 MV/RLP**

**MICHAEL J. ASTRUE,
Commissioner of Social Security,**

    **Defendant.**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDED DISPOSITION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying his application for disability income benefits and supplemental security income. This matter has been fully briefed by the parties and has been referred to this court for a report and recommendation. For the reasons stated herein, I recommend that the Commissioner's decision be affirmed in part and reversed in part, and that this matter be remanded for additional proceedings.

**I.    Procedural History**

Plaintiff filed for disability insurance benefits on August 31, 2005 and for supplemental security income on September 23, 2005. (Tr. 54-29, 487-497). He contends that he has been disabled since January 31, 2003. (Tr. 91). His applications were denied initially and on reconsideration. (Tr. 35-37, 483). He sought review by an administrative law judge ("ALJ"). The ALJ conducted a hearing on December 14, 2007, at which Plaintiff appeared with counsel. (Tr. 504). The ALJ issued an unfavorable decision on May 12, 2008. (Tr. 9-23). The Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision of the Commissioner. (Tr.499, 3). **Jensen v. Barnhart**, 436 F.3d 1163, 1164 (10th Cir.2005), **Doyle v.**

1

**Barnhart**, 331 F.3d 758, 759 (10th Cir. 2003).

## II.      Standard of Review

Review of the Commissioner's decision is limited to determining whether substantial evidence in the record as a whole supports the factual findings, and whether the correct legal standards were applied.  **Hamilton v. Secretary of Health & Human Services**, 961 F.2d 1495, 1497-98 (10 Cir.1992).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  **Hamilton**, 961 F.2d at 1498.  Evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  **Musgrave v. Sullivan,** 966 F.2d 1371, 1374 (10th Cir.1992). The court may neither re-weigh the evidence nor substitute its discretion for that of the Commissioner.  **Hinkle v. Apfel**, 132 F.3d 1349, 1351 (10th Cir.1997); **Kelley v. Chater**, 62 F.3d 335, 337 (10th Cir.1995).  Where the evidence as a whole can support either the agency's decision or an award of benefits, the agency's decision must be affirmed. **Ellison v. Sullivan**, 929 F.2d 534, 536 (10th Cir.1990).

## III.     Five-step Sequential Evaluation Process

The Social Security Act defines "disability" as the inability to engage in any substantial gainful activity for at least twelve months due to a medically determinable impairment. See 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is under a disability, the Commissioner applies a five-step sequential evaluation.  The steps are: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) whether the impairment prevents the claimant from continuing his past relevant work; and (5) whether the impairment prevents the claimant from doing any kind of work. See 20 C.F.R. §§ 404.1520; 416.920.  The burden is on the claimant through step four.  If step four is satisfied, the

burden shifts to the Commissioner to establish that the claimant is capable of performing work in the national economy. **See Williams v. Bowen**, 844 F.2d 748, 751 (10th Cir.1988).

The evaluation at step four includes assessment of the claimant's residual functional capacity ("RFC" herein). This RFC assessment is used at both steps four and five. 20 C.F.R. §§404.1520(a)(4); 404.1520 (f) & (g); 416.920 (a)(4); 416. 920 (f) & (g).

**III.    Facts**.

Plaintiff was born on June 20, 1957. (Tr. 54). He has a GED (Tr. 551) and served in the Navy from 1974-1978 in a non-combat role. (Tr. 54, 292). He obtained a 2-year Associate's Degree in 1984, and in 1989 completed training as a Life Underwriter. (Tr. 101). He has worked as a police officer ( 1984-1987) an insurance agent (1990-1998), stock broker (1997-1999), retail sales person (1999-2005), day laborer (2001), waiter (2002-2003), and car sales man. (2005). (Tr. 438, 75, 95).

Plaintiff's medical history includes diagnoses of anxiety (Tr. 464, 463, 460-461, 405), depression (Tr. 242, 457-460, 405), Major Depressive Disorder (Tr. 332, 337, 440), Depressive Adjustment Disorder with mixed anxious and depressed mood, chronic (Tr. 298), migraine headache (Tr. 464, 309, 405), arthralgias (Tr. 464, 244-245), arthritis ((Tr. 308, 234), pseudodementia (Tr. 242), hearing loss (Tr. 247), prolactin secreting pituitary tumor (Tr. 262) causing hypogonadism and gynecomastia (Tr. 194) and hypothyroidism (Tr. 195). Plaintiff was diagnosed as suffering from Post Traumatic Stress Disorder in the late1970s. (Tr. 332). Psychiatric evaluation by the Veterans' Administration in January of 2007 indicated that he did not meet the criteria for that diagnosis. (Tr. 299).

The specifics of Plaintiff's medical history as they relate to the issues raised are discussed below.

**IV.     The ALJ's Findings.**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged date of onset of disability, that he suffered from "severe" impairments of migraine headaches, affective disorder, osteoarthritis and hypothyroidism, but that his impairments did not meet or equal a listed impairment. He found that Plaintiff was not credible as to the intensity, persistence and limiting effects of his impairments. He found that Plaintiff

> . . .had " the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)[1] except that with respect to postural limitations, the claimant is limited to occasionally climbing, balancing, stooping, kneeling, crouching and crawling and must avoid concentrated exposure to hazardous machinery and unprotected heights; and is limited to performing simple tasks requirement simple directions and is also limited to working primarily with things rather than with people.

(Tr. 15).

Utilizing this RFC and the testimony of a vocational expert ("VE") the ALJ determined that Plaintiff could not return to past relevant employment, but retained the ability to perform several jobs which exist in significant numbers in the regional and national economy[2], and was therefore not disabled.

---

[1] "*Light work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standings, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. . . ."

[2] *General clerk*, DOT 209.562-010, reduced by one-half of available jobs, to 1,750,000 in the national economy and 22,000 in the regional economy; *Inserter*, DOT 649.685-094, 219,000 in the national economy and 12,000 in the regional economy; *Clerical Router*, DOT 222.587-038, 210,000 in the national economy and 39,000 in the regional economy; *Polarity Tester* DOT 727.687-054, 105,000 in the national economy and 37,000 in the regional economy; *Buckler and Lacer*, DOT 788.687-022, 107,000 in the national economy and 8,800 in the regional economy; *Label Cutter*, DOT 585.685-062, 132,000 in the national economy and 5,900 in the regional economy; *Laminator*, DOT 690.685.258, 132,000 in the national economy and 6.700 in the regional economy. (Tr. 22, referring to Tr. 539-544).

V.     **Issues on Appeal**

Plaintiff contends that reversal with remand for additional proceedings is required for the following reasons:

      A.      The ALJ failed to provide Plaintiff with a proper List of Exhibits.

      B.      The ALJ's credibility determination was not supported by substantial evidence.

      C.      The ALJ failed to assess the weight to be given to Dr. Iqbal's opinion that Plaintiff was unable to work.

      D.      The ALJ's assessment of Plaintiff's RFC did not include all of his limitations.

VI.    **Analysis**

      **A**.      **The Commissioner Was Not Required to Follow HALLEX in Preparing an Exhibit List.**

Plaintiff's first ground for appeal rests on the Commissioner's failure to follow the provisions of §§I-2-1-20 and I-2-1-93 of the HALLEX procedural manual, which requires the preparation of an exhibit list, utilizing a prescribed format, when a partially favorable or fully unfavorable decision has been made by the ALJ. The format set out in HALLEX separates documents into broad categories, such as "jurisdictional documents" and "medical evidence," and within each category, separately identifies and numbers each document. The exhibit list utilized in this case was prepared utilizing the "Streamlined Folder Assembly Process," instituted by the Social Security Administration in 2007, in an effort to deal with a serious back log of cases pending before it. The exhibit list at issue retains the same broad categories set out in HALLEX §I-2-1-93, but does not list individual documents. (Tr. 1). For example, under "medical evidence" the exhibit list indicates there are 297 pages of material, but does not separately identify the records by provider or date. Plaintiff contends that because the medical records were not individually identified in the

exhibit list, it is not possible for him to know (1) what evidence the ALJ relied upon, (2) whether the ALJ reviewed the complete record, and (3) whether all evidence Plaintiff submitted was made part of the record.

The Social Security Administration is bound by statutes, regulations, and rulings. 42 U.S.C. § 401 et seq.; 20 C.F.R. Pt 404, Pt. 416; 20 C.F.R. § 402.35(b)(1)(rulings are binding on the Social Security Administration)**; Nielson v. Sullivan**, 992 F.2d 1118, 1120 (10th Cir.1993)(agency rulings are binding on an ALJ). To the extent the HALLEX follows the statutes, regulations, and rulings, its provisions are enforceable. **McCoy v. Barnhart**, 309 F.Supp.2d 1281, 1284 (D.Kan.2004). If, however, HALLEX goes beyond the statutes, regulations, and rulings it is not binding on the Commissioner. There is no statute, regulation or ruling that requires the ALJ to prepare an exhibit list utilizing any specific format. Accordingly, HALLEX §§I-2-1-20 and I-2-1-93 do not carry the force of law and are not binding here.

The ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. **Clifton v. Chater**, 79 F.3d 1007, 1009-10 (10th Cir.1996) (holding "[t]he record must demonstrate that the ALJ considered all of the evidence," and, while he needn't discuss every piece of evidence, the ALJ must "discuss[ ] the evidence supporting his decision, ... the uncontroverted evidence he chooses not to rely upon, [and] significantly probative evidence he rejects"). The manner in which the exhibit list is prepared does not alter this duty.

A claimant who contends that there is significantly probative or uncontoverted evidence the ALJ did not consider, as evidenced by a failure to discuss it, or that evidence he submitted was not made part of the record, may make those arguments.

### B. The ALJ's Credibility Determination Is Supported by Substantial Evidence.

The standard for evaluation of credibility decisions is well established:

> "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." **Diaz v. Secretary of Health & Human Servs.**, 898 F.2d 774, 777 (10th Cir.1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." **Huston** [v. Bowen], 838 F.2d [1125,] 1133 [ (10th Cir.1988) ] (footnote omitted); **see also Marbury v. Sullivan**, 957 F.2d 837, 839 (11th Cir.1992) (ALJ "must articulate specific reasons for questioning the claimant's credibility" where subjective pain testimony is critical); **Williams [ex rel.] Williams v. Bowen**, 859 F.2d 255, 261 (2d Cir.1988) ( "failure to make credibility findings regarding ... critical testimony fatally undermines the [Commissioner's] argument that there is substantial evidence adequate to support [her] conclusion that claimant is not under a disability").

**Kepler v. Chater**, 68 F.3d 387, 391 (10th Cir.1995).

In his assessment of credibility, the ALJ found "extremely significant" that Plaintiff identified his wife as the disabled individual, not himself, in a function report submitted to the Administration. (Tr. 16). If this statement by the ALJ had not been followed by an explanation of what in the report the ALJ found significant, it would not provide substantial evidence to support his credibility findings. However, the ALJ did explain in great detail the factors that lead to his conclusion that Plaintiff's testimony as to his limitations was not entirely credible:

> The claimant reported that he lives with his wife and they are together almost 24 hours per day. . . he helps her out of bed and into her wheelchair and assists her with her activities of daily living. He . . . gives her medication and injections. He also stated that his wife requires assistance putting on and taking off her clothing due to her problems with balance and handshaking. . . (and) needs assistance getting in and out of the bath tub. He . . . helps her with shampooing and conditioning her hair . . . (and) assists her with shaving her legs due to her inability to do the same due to the trembling of her hands. (She). . .requires help with cutting her food and sometimes needs to be fed. . . (He) takes her to one medical appointment per day. . . .(She) suffers from some incontinence and requires help toileting. . . (She) has arthritis/bursitis in both hands, both shoulders and the right elbow making it hard for her to wheel herself in her wheelchair. . . (She) must be reminded to take her Coumadin and several other drugs since she becomes confused as to what medications she needs to take. (She is) not able to pay bills or use a checkbook due to her level of confusion. The claimant also reported that he takes care of their two dogs.
>
> The Claimant stated . . that he gets up and walks around the apartment complex to

> try and loosen up his back. He also advised that he runs errands for his wife and does the grocery shopping . . .(and) that his daily activities include cooking, cleaning, taking care of his wife's personal needs such as dressing, grooming and pushing her wheelchair. The claimant also states that he has two small dogs, one of whom is diabetic, and requires twice daily insulin injections. . . (He) also mentioned that his chores including cleaning, laundry and limited ironing.
>
> The Administrative Law Judge concludes that the claimant's written statements directly contradict his hearing testimony and paints (sic) the picture of a very capable individual with physical and mental stamina to care almost 24/7 for a much incapacitated spouse. The record indicates that the claimant not only manages his own complicated daily medication regime (sic), but also is in charge of his wife's personal care needs, medical management including daily injections, frequent physicians visits, in addition to household management, and if that is not enough, the claimant also cares for two dogs, one of whom required daily insulin injections. The claimant alleged trembling hands to the point that he cannot tie his shoes, yet is able to shave his wife's legs and assist her with dressing and undressing. The claimant alleges dizziness and poor balance yet assists a severely handicapped individual in and out of her wheel chair and bath tub, and automobile for the frequent doctor's visits. The claimant alleges an inability to lift more than a few pounds, yet obviously is called upon to lift a considerable amount of weight.

(Tr. 16-17).

The ALJ also discussed objective medical evidence which undercut Plaintiff's testimony regarding his limitations. For example, Plaintiff claimed that he could walk only 1/4 mile, with a limp. (Tr. 129). The ALJ referred to Dr. Schutte's observation that Plaintiff walked without any apparent difficulty and did not seem to be in any acute distress. (Tr. 18, referring to Tr.439). Plaintiff testified that one of his worst problems was depression. (Tr. 517). The ALJ referred to Plaintiff's statement to Dr. Sergio Castillo that he was feeling fairly good on his medication regimen. (Tr. 19, referring to Tr. 296-297). The ALJ also noted that Dr. Castillo rated Plaintiff's symptoms of depression and anxiety as "mild." (Tr. 19, referring to Tr. 299).

I find that the ALJ's rejection of Plaintiff's credibility is supported by substantial evidence. A supportable finding that a claimant is not entirely credible does not compel a finding that he is not disabled. Rather, the ALJ's findings at the remaining steps of the sequential evaluation process,

including evaluation of his RFC, must be supported by substantial evidence and the application of correct legal principles. **Thompson v. Sullivan**, 987 F.2d 1482, 1490 (1993).

### C. The ALJ Applied Correct Legal Principles in the Evaluation of the Opinion of Dr. Iqbal.

One of Plaintiff's treating physicians was neurologist Dr. Javed Iqbal, who treated him primarily for management of migraine headaches. On March 1, 2006, Plaintiff also complained of memory problems, stress and spinal pain. Other than some spinal pain, Plaintiff's examination was normal, including the "Mini-Mental State Examination,"[3] a screening test used to assess overall brain function. **See** www.bami.us/MiniMental.htm. (Tr. 302). Dr. Iqbal felt Plaintiff might have pseudodementia, and stated "considering his neurologic and psychiatric status, he does not appear to be a candidate to hold a job or work." (Tr. 302). The diagnosis of pseudodementia was subsequently abandoned. (Tr. 287, 530).

Plaintiff contends that the ALJ erred because he did not indicate the weight he gave to Dr. Iqbal's opinion that Plaintiff appeared unable to hold a job or work.

Whether an individual is disabled under the provisions of the Social Security Act is a determination reserved to the Commissioner. SSR 96-5p, 1996 WL 374183. The ALJ must consider opinions from medical sources on that issue and "evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." Id. at *3. This is what the ALJ did.

The ALJ reviewed Dr. Iqbal's treatments records. (Tr. 20). He specifically addressed Dr. Iqbal's comment that Plaintiff did not appear to be able to work, stating "Although the doctor's

---

[3]BP: 128/60 mmHG. P: 60. RR: 19. He is awake and alert. Strength is normal. Gait/station is normal. He has some spinal pain. On his Mini Mental State Examination he scored 28/30.

opinions have been carefully considered, the determination concerning disability is reserved to the commissioner." (Tr. 21). The ALJ found more compelling the opinions expressed by other treating and examining sources.

Dr. Stuart Kelter saw Plaintiff on fourteen occasions from June 2006 to February 2007. In assessing his mental status, Dr. Kelter concluded, " (He is) intermittently depressed, mostly at a moderate level, which allows him to do what he needs to do but without much capacity for pleasure. Has retained his sense of humor and is able to engage other people. No signs of thought disorder or any kind of disorientation." (Tr. 282). The ALJ accorded this opinion controlling weight. (Tr. 20).

Dr. James Schutte examined Plaintiff on January 6, 2006. (Tr. 437-441). Based upon interview, testing and mental status examination, Dr. Schutte assessed specific limitations in Plaintiff's mental functioning:

> His attention and concentration were measured to be in the extremely low range, but his performance was unusually low. . . The claimant's ability to understand and remember basic instructions does not seem impaired. His ability to concentrate and persist at tasks of basic work seems moderately impaired due to depression. His ability to interact with the general public and/or co-workers seems moderately impaired due to depression and anxiety. His ability to adapt to changes in the workplace seems moderately impaired due to depression and anxiety.

(Tr. 440).

The ALJ accorded "substantial weight" to Dr. Schutte's opinion, finding Dr. Schutte conducted a thorough examination, provided the factual basis for his conclusions and that his conclusions were consistent with objective evidence of record. (Tr. 21).

An ALJ has an obligation to determine whether a treating physician's opinion is entitled to controlling weight or, if not, whether it is entitled to some lesser weight or none at all. **Watkins v. Barnhart**, 350 F.3d 1297, 1300-01 (10th Cir.2003). The ALJ's decision "must be sufficiently

specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." **Id.** (quotation omitted). The goal is to facilitate meaningful review. **Id**.

I find that the ALJ evaluated the evidence in determining what weight to give Dr. Iqbal's opinion that Plaintiff appeared disabled, that his discussion of the medical evidence is sufficiently specific to make clear the weight he accorded Dr. Iqbal's opinion, and that substantial evidence supports his determination not to credit that opinion.

**D.      Substantial Evidence Supports the ALJ's Finding That Plaintiff's Headaches Were Adequately Controlled by Medication.**

Plaintiff contends that the ALJ erred in failing to include limitations caused by headache in his hypothetical question to the VE. The ALJ found that although Plaintiff suffered from "severe" migraine headaches, they were well-controlled though the use of Depakote. (Tr. 13, 20).

Plaintiff first saw Dr. Iqbal[4] on December 4, 2004 stating that his headaches has been persistent for six months. (Tr. 308). Dr. Iqbal prescribed three medications, Depakote[5], Maxalt and Frova[6]. By January 2004, Plaintiff was headache free with no abnormalities on examination.[7]

---

[4]Dr. Iqbal provided the most complete evaluation of Plaintiff's complains of headache. While Plaintiff complained of headache to numerous other medical providers, the records of those providers simply note his complaints without any focused examination: (VA physicians, 2002 - Tr. 451-452; Chiropractor , 2003-2006 - Tr. 3610371); Dr. Zahir, 2004 - Tr. 243-245; 2005 - Tr. 241, 239, 2007-Tr. 230; VA physician Grummert, 2005 - Tr. 460-461; VA provider Aday, 2005 (Tr. 405); Consulting psychologist Schutte, 2006- Tr. 438, 440; VA physician Castillo, 2007 - Tr. 298; Treating psychologist Dr. Kelter, 2007 - Tr. 282 ).

[5]Depakote is indicated for prophylaxis of migraine headache. **Physicians' Desk Reference**, p. 433, (57th Ed., 2003).

[6]Maxalt and Frova are indicated for the acute treatment of migraine attacks with or without aura in adults. Id. pp. 2026 and 1256.

[7]". . . (He) has been taking 500 mg (of Depakote) at night without any side effects. Moreover, he takes Xanax. Over all he is doing very well and is headache free. There is no diplopia, dysarthria, or dyphasia. EXAM: BP 110/60, P 68. He is awake and alert. Strength is normal. Coordination is normal. Gait/station is normal." (Tr. 307).

Thereafter unsuccessful attempts were made to taper Depakote, and the dosage was returned to 1000 mg. per night. (Tr. 306- 307). Plaintiff developed tremors which were felt to be a side effect of Depakote (Tr. 305, 219), and by January 2007 he complained again of headache. Dr. Iqbal ordered an EEG which was unremarkable, and indicated that Plaintiff appeared to have myoclonus.[8] (Tr. 220-222, 219). No changes were made to the medication management of his headache.

There is substantial evidence in the record to support the ALJ's determination that Plaintiff's migraine headaches were adequately controlled by medication. With regard to the side effect of medication and myoclonus, Plaintiff raises no claim of error in the matter that the ALJ evaluated these conditions.

    **E.**     **The ALJ's Mental RFC Finding and Resulting Hypothetical Question posed to the Vocational Expert Are Not Supported by Substantial Evidence.**

The ALJ posed a hypothetical question to the vocational expert which included a mental RFC "limited to work involving simple tasks with simple directions, and working primarily with things rather than with people." (Tr. 541-542). The ALJ did not include in the hypothetical moderate difficulties in the ability to maintain concentration, persistence or pace even though, relying on the findings of Dr. Schutte quoted above, he concluded that Plaintiff suffered from this limitation. (Tr. 14, 21).

It is well-established that an ALJ's hypothetical question to a vocational expert "must include all (and only) those impairments borne out by the evidentiary record." **Evans v. Chater**, 55 F.3d 530, 532 (10th Cir.1995). Hypothetical questions should be crafted carefully to reflect a claimant's residual functional capacity, because "[t]estimony elicited by hypothetical questions that

---

[8]One or a series of shock-like contractions of a group of muscles, of variable regularity, synchrony, and symmetry, generally due to a central nervous system lesion. **Stedman's Medical Dictionary**, 27th Ed.

do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision." **Hargis v. Sullivan**, 945 F.2d 1482, 1492 (10th Cir.1991).

In **Wiederholt v. Barnhart**, No. 03-3251, 121 Fed. Appx. 833 (10th Cir. Feb. 8, 2005) (unpublished)[9], an administrative law judge gave a similar hypothetical to the vocational expert. In that case, the administrative law judge found that claimant had mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. **Wiederholt**, 121 Fed. Appx. at 839. The hypothetical to the vocational expert included only the limitation of "simple, unskilled" tasks mentally. **Id.** The Tenth Circuit concluded that the hypothetical question was insufficient because it did not reflect all of the claimant's limitations with accuracy. The Court stated

> "[t]he relatively broad, unspecified nature of the description 'simple' and 'unskilled' does not adequately incorporate the [administrative law judge's] additional, more specific findings regarding [claimant's] mental impairments. *Because the [administrative law judge] omitted, without explanation, impairments that he found to exist, such as moderate difficulties maintaining concentration, persistence or pace, the resulting hypothetical was flawed.*"

**Wiederholt**, 121 Fed. Appx. at 839 (emphasis added); **see also Field v. Astrue**, Slip Copy, 2009 WL 1212044, *8 (D.Kan. 2009) (ALJ's use of the term "unskilled work" without additional explanation regarding specific work-related mental activities is too broad and unspecified a term to convey meaning with regard to mental limitations in plaintiff's RFC).

The Commissioner argues, in effect, that the ALJ explained why he did not include a "moderate" limitation in concentration, persistence or pace in the hypothetical question, citing to

---

[9]Unpublished disposition cited as persuasive authority pursuant to Tenth Circuit Rule 32.1.

the tasks the ALJ referred to in his evaluation of concentration, persistence and pace. (Tr. 14; see Tr. 117, 120, 125, 132, 136). The court cannot ignore the fact that despite the numerous tasks Plaintiff is able to perform, the ALJ still found that he had moderate difficulty in concentration, persistence or pace. This limitation, when included in proper hypothetical questions posed to vocational experts, may result in the limitation of jobs otherwise within an individual's RFC.  **See Kingsbury v. Astrue**, Slip copy, 2008 WL 4826139, *8 (D. Kan. 2008).

Accordingly, I find that the hypothetical question posed by to the VE did not include all of the mental limitations that ALJ found to exist, and therefore does not constitute substantial evidence.

**VII.    Recommendation and Notice of Right to Object**

It is recommended that the ALJ's decision be AFFIRMED IN PART and REVERSED IN PART,  and that this matter be REMANDED to the Commissioner for additional proceedings to include obtaining vocational testimony, consistent with this Report and Recommended Disposition.

The parties are advised of their right to file written objections within ten [10] days after being served with this Analysis and Recommended Disposition, in accordance with 28 U.S.C. § 636. The parties are further advised that failure to make timely objection waives their right to appellate review of both factual and legal issues contained herein. **Moore v. United States,** 950 F.2d 656, 659 (10th Cir.1991).

_____
Richard L. Puglisi
United States Magistrate Judge